## SUPREME COURT.

THE PEOPLE ex rel. McSPEDON and BAKER agt. ROBERT T. HAWS, Comptroller.

Where the legislature has enacted that a party shall receive compensation for certain services, and has taxed the inhabitants in a particular locality for that purpose, they have as much authority to specify a *maximum amount*, beyond which the party shall receive nothing, as they have to specify the *exact sum* in the first instance, and in neither case, have the courts power to supervise or review such action.

An act authorizing the comptroller of the city of New York to pay a party, which they have declared to be entitled to compensation for services rendered the county, the amount when it shall be *judicially determined*, does not require that an *ordinary action* shall be commenced against the board of supervisors and a judgment recovered in it, before the comptroller shall pay any amount. This judicial determination may be and is properly had under proceedings upon *mandamus*.

An order of the special term is not final so as to authorize an *appeal*, where there is an order of reference outstanding and undetermined.

*New York General Term, May,* 1861.

CLERKE, SUTHERLAND and ALLEN, *Justices.*

APPEAL from an order at special term allowing a *mandamus* against the comptroller of the city of New York.

> J. T. BRADY, J. W. EDMONDS and WM. FULLERTON, *for relator.*
>
> A. R. LAWRENCE, Jr., and H. H. ANDERSON, *for comptroller.*

By the court, CLERKE, P. Justice.   I.  The position taken by the counsel for the defendant in his seventh point, is disposed of by the act of April 17th, 1860, authorizing the supervisors of the county of New York to raise money by tax for city and county purposes.   By the sixth section of the act they are empowered to raise and collect, in addition to the ordinary taxation, the further sum not exceeding eighty thousand dollars, to meet and pay whatever sum up to that amount may be found due to the contractors with the commissioners of records.

Whether the legislature had or had not the constitutional power originally to appoint the commissioners of records, under whose direction and superintendence the work was done, yet the work having been done and the legislature determining that the work was a service rendered to the county, they had the right to tax the inhabitants of that portion of the state to pay for it; although it cannot authorise the taking of the property of an individual for public purposes without compensation, or for private purposes with or without compensation, yet it has the absolute power to determine what sums shall be raised by taxation, and the purposes to which they shall be applied.

It can make appropriations of money whenever the public well-being requires, and of this it alone is the sole judge.

It can apportion the public burthens among all the tax-paying citizens of the state or among those of a particular

section or territorial division. (*Town of Guildford* agt. *Supervisors of Chenango county*, 3 *Kern.*, 143; *The People* agt. *The Mayor of Brooklyn*, 4 *Coms.*, 419.)

In the present case the legislature has deemed it proper to determine that the work performed by the relators for the county is for the public good; and without any reference as to the mode by which they were authorized to enter upon the performance of this work, it has enacted that they shall receive compensation for it, and has taxed the inhabitants of this division of the state for that purpose.

It is no objection to this that the legislature has not declared the precise amount of the claim, being ignorant of the exact value of the service; the act specifies a maximum amount, beyond which the *relators* shall receive nothing, at least in this way, for the services already rendered, and it indicates the method by which the actual amount due shall be ascertained.

This the legislature has as much authority to do as to specify the exact sum absolutely in the first instance; and in neither case have the courts power to supervise or review the action of that branch of the government.

II. The only question then that remains, arises on the interpretation of the last sentence of the section to which I have referred. It authorizes the comptroller to pay the amount, when it shall be *judicially determined.* Does this require that an ordinary action shall be commenced against the board of supervisors, and a judgment recovered in it, before the comptroller shall pay any amount, or shall the amount be determined in any way which the court may deem expedient? What the legislature intended by this phrase can only be ascertained by considering what was the legal method of enforcing claims of this nature against the board of supervisors, at the time the act of 1860 was passed.

If the remedy by an ordinary action could be sustained, it would be reasonable to suppose, that the legislature intended that this method of judicial determination should

be adopted; otherwise, if the only method by which redress could be obtained, was by the extraordinary remedy by writ of *mandamus*, it is fair to assume that the judicial determination may be provided for under the proceedings in that writ, in such a manner, as the court entertaining the proceedings may deem most convenient and conducive to the end contemplated by the legislature; all constitutional questions as to the appointment of the commissioners, all questions relating to the utility of the work; in short, all questions as to the meritorious nature of the claim being disposed of by that body, in its sovereign capacity.

The only remaining subject of inquiry was the precise amount of that claim, which it left to be determined by some other tribunal.

Nothing is better established than that generally a writ of *mandamus* will not lie where an adequate remedy by action exists.

The writ of *mandamus* is a high prerogative writ, of which the remedial power is most effective and most extensive.

It was devised to supply a defect in the administration of justice. It is directed to any natural person, corporation, or inferior court of judicature requiring them to do some specific thing which the supreme court has resolved it is their peculiar office and duty to do.

It lies to compel the admission or restoration of the party applying to any office or franchise of a public nature.

It lies for the production, inspection, or delivery of public books or papers; for the surrender of the regalia of a corporation; to oblige bodies corporate to affix their common seal; to compel the holding of a court; and for an infinite number of other purposes, which it is impossible minutely to recite. (3 *Blackstone*, 110.)

In some cases this writ may be issued where the injured party has another more tedious method of redress, as in the case of admission or restitution to an office. Where, how-

ever, the party has a complete and specific redress at law, the circumstance of its being a more tedious method will not be sufficient to warrant the court in granting a *mandamus*.

There must be not only a specific legal right, but generally the want of a specific legal remedy, in order to found an application for this writ. (*Lord* ELLENBOROUGH, 8 *East*, 219.)

But it will never be granted when there is a plain and adequate remedy by action for the party aggrieved. (*Ex parte Lynch*, 2 *Hill*, 45.)

But in the present case had the relators a remedy by action?

The Revised Statutes very amply and specifically provide for the cases in which supervisors—boards of supervisors and counties may be sued. (1 *R. S.*, 384 *m.*, 377 *m.*; 2 *id.*; 473 *id.*, &c.)

According to these provisions the counties may be sued for certain claims, or in respect of certain causes of action or controversies, but not every claim, cause of action or controversy. I agree entirely with the views presented by Mr. Justice OAKLEY in *Brady* agt. *The Supervisors of New York*, (2 *Sand.*, *S. C. R.*, 460,) "that those sections of the Revised Statutes were intended to provide a remedy against a county for such causes of action (and no other) as could not be presented to and examined and allowed by the board of supervisors as *county charges*. But every claim which is a county charge is to be audited and allowed by the board of supervisors, who are a judicial body—constituted by law to decide all matters of account between individuals and the public body composing the county which they represent. The statute virtually makes the board a court of arbitration, to which all parties having claims against their respective counties other than those of the indefinite kind before referred to must submit such claims for examination, audit and allowance."

The opinion which I have quoted shows that all the cases establish this general principle, that whenever services

have been rendered, which are beneficial to a county, and no specific compensation is provided for the same by law, they shall be deemed contingent charges against the county; of the allowance of such charges, the board of supervisors, as we have seen, is the sole judge, unless the supreme legislature itself should allow and provide for it, as in the present case.

The *relators* then had no remedy by action; and the only remedy to which they could resort for redress was the writ of *mandamus*. The legislature could not therefore have intended by the terms "judicial determination" a determination by action because such a remedy did not exist in favor of the *relators*.

The *relators* could have had no judicial determination except in a proceeding of this nature, and in the absence of any specific direction in the act, as to the manner of this determination it would be unreasonable *to* infer that any other mode was intended than that which the court, where the proceedings by *mandamus* were pending, may deem expedient.

We are, therefore, unanimously of opinion that the remedy adopted by the *relators* is the proper one, and that the decision of the special term is correct.

But as we find that the decision appealed from is not strictly speaking a final judgment, although it decides the merits of the controversy, we must dismiss the appeal instead of affirming the judgment.

Whenever a case is referred by the special term even when it settles in its order all the essential points at issue it is nothing but an interlocutory order and no final judgment can be entered until the coming in of the report.

There can be an appeal only from a final judgment.

Appeal dismissed with costs.